CHARLES W. RUSSELL *et al.*

*v.*

DELLA R. MITCHELL, *et al.*

*Opinion filed October 23, 1906—Rehearing denied Dec. 6, 1906.*

1. DEEDS—*what does not show delivery of deed.* Delivery of a deed is not shown by the testimony of the notary public who drew it that the deed was delivered by the grantor to the grantee, where his testimony is not based upon any distinct recollection of the transaction, which had taken place seventeen years before, but only upon his rule and habit to require grantors to deliver deeds to the grantees.

2. SAME—*there cannot be partial delivery of a deed.* To constitute valid delivery of a deed the grantor must absolutely divest himself of all control over the same, and if he retains any custody or control over it, or if it is not actually delivered but is to become effective upon the grantor's death, there is no valid delivery.

3. SAME—*when a deed is not delivered.* Evidence that a deed from wife to husband was among his papers at the bank before her death and that he recorded it after her death does not show a valid delivery, as against evidence that after the execution of the deed the wife kept the property insured in her own name and borrowed money upon applications which she signed as owner, and that the husband made declarations to the effect that if his wife died first he was to have the property but if he died first the title would remain in her.

APPEAL from the Circuit Court of Wabash county; the Hon. P. A. PEARCE, Judge, presiding.

At the April term, 1905, of the circuit court of Wabash county the appellants, Charles W. Russell and Stewart L. Russell, filed their bill against the appellees, Della R. Mitchell and John M. Mitchell, in which they alleged that Fannie Russell, the mother of appellants and of appellee Della R. Mitchell, died intestate March 1, 1901, the owner of in-lot 205 and part of in-lots Nos. 158 and 160, designated on a plat of the subdivision of said in-lots Nos. 158 and 160 as lot 1 in Mt. Carmel, Illinois, leaving her surviving the com-

plainants, Charles W. Russell and Stewart L. Russell, and the defendant Della R. Mitchell, her only children, and Charles R. Russell, her husband, her only heirs-at-law; that Charles R. Russell departed this life intestate November 28, 1904, the owner in fee of a part of in-lots 158 and 160, being a strip ten feet and six and one-half inches in width, fronting on Market street and extending westerly 186 feet to the alley, in said Mt. Carmel. It is alleged that on February 1, 1888, Fannie Russell and Charles R. Russell signed and acknowledged a deed purporting to convey the real estate first above described and belonging to the said Fannie, to John M. Mitchell, and he, with his wife, Della R. Mitchell, thereupon signed and acknowledged a deed purporting to convey said real estate to Charles R. Russell, but said deeds were both made without consideration, the said Mitchell acting as a medium to pass title thereto, and that the execution of the said deeds constituted a single transaction, was colorable only, and testamentary in character; that said deeds were not delivered to the grantees therein named but remained in the possession of the said Fannie Russell to the time of her death, and after her death the said Charles R. Russell found said deeds among the effects of the said Fannie Russell and on April 17, 1901, had them recorded, and they thereupon became a cloud upon the title of her heirs to the property; also, that on May 24, 1904, Charles R. Russell executed and acknowledged an instrument in writing without consideration and of a testamentary character, which, among other things, purported to convey all of the real estate above described to Della R. Mitchell, which by its terms burdened her with a payment of certain sums of money for the education of his grandchildren and for the payment of other sums for charitable purposes, which instrument was not delivered to nor accepted by the said Della R. Mitchell in the lifetime of the said Charles R. Mitchell with the intention of passing title thereby, but was retained by the said Charles R. Russell until his death, after which

the said John M. Mitchell wrongfully obtained possession of the same and had it recorded, and thereupon it became a cloud upon the title to said real estate. The prayer was that the deeds of February 1, 1888, and of May 24, 1904, be each set aside and declared null and void, as clouds upon the title to said real estate, and that the same be partitioned equally between complainants and said Della R. Mitchell.

· The answer of Della R. Mitchell denied that the deeds of February 1, 1888, heretofore referred to, were colorable and without consideration and were never delivered, but alleged that after their execution the said Charles R. Russell entered into the possession and control of the real estate therein described and so remained under claim of ownership until May 24, 1904, on which date he executed the deed to her; that he leased the premises, collected all rents, paid all taxes, kept the buildings insured and in repair, expended large sums of money in improvements, and that upon his death she became the owner in fee of all of said premises by virtue of the deed of May 24, 1904, and that complainants have no title therein.

Upon a hearing in open court before the chancellor the bill was dismissed for want of equity, to reverse which this appeal has been prosecuted.

S. Z. LANDES, E. B. GREEN, and M. H. MUNDY, for appellants.

C. S. CONGER, P. J. KOLB, and GEORGE P. RAMSEY, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court.

Disposing of the questions affecting the title to the property described in the deeds of February 1, 1888, there is no controversy as to the title up to that time being in Fannie Russell. Upon that date the deeds mentioned in the bill were signed and acknowledged, but whether the convey-

ances were completed by delivery or only intended by the parties to become effective in the future is the principal question in controversy. It is not claimed that there was any money consideration for either of the said deeds. The transaction was only between the wife, Fannie, and her husband, Charles R. Russell, and she intended by it to either transfer the absolute ownership of the property from her to him, as claimed by appellees, or to so arrange the title that the property would go to Charles R. Russell if he survived his wife or remain in her if she survived him, as earnestly insisted by appellants.

The complainants below, in support of the allegations of their bill as to these deeds, prove that after they were signed and acknowledged the premises were repeatedly insured in the name of Fannie Russell as owner, and the agent of the insurance company was notified by Charles R. Russell to make the policies payable to his wife as she was the owner, and immediately upon her death he went to the agent and notified him that in the future the premises must be insured in his name, as he then had the title, and that thereafter his directions were complied with. The evidence also shows that on August 9, 1900, shortly prior to the death of Fannie Russell, a loan was obtained on the same property through one Thomas C. Day, of Indianapolis, to obtain which it was necessary for the owner to make a written application and swear to the truth of the statements therein made. In the application Fannie Russell stated that she was in peaceable possession of the premises at the time of the application and that her title thereto had never been questioned; that there were no judgments against the premises nor suits pending which were a lien upon her title; that there were no unrecorded deeds or mortgages outstanding and that she was the absolute owner of the property. From the date of the deeds until the date of her death various other loans were obtained, in which it appears that she was the owner of the premises.

There is also evidence in the record tending very strongly to support the contention that at the date of the execution of the deeds it was not the intention of the parties to transfer the title to Charles R. Russell, but merely to place it in such a condition that in case of the death of either of the parties it would be in the survivor. Charles R. Russell himself told various witnesses, in substance, that it was the understanding between himself and wife that the title to the property was in such a condition that if she died first he would get the property and if he died first the title would remain in her. Both of the complainants below testified that he so stated to them after the death of their mother. No question seems to be raised as to the competency of their testimony, and witnesses on both sides who were parties to the suit were permitted to testify in their own behalf to acts and conversations which took place after the death of Mrs. Russell. But independently of the testimony of complainants, the same facts were proved by other competent and disinterested witnesses. Nora Hilbert testified that not long before the death of Mrs. Russell she heard several conversations between her and her husband about the property in question, in which he said if he died first the property was to go to Mrs. Russell and if she died first it was to go to him. This testimony is consistent with the fact that the deeds were not recorded until after the death of Mrs. Russell.

The only direct evidence offered by the defendants below as to an actual delivery of the deeds in question was that of Robert Bell, the notary public who took the acknowledgment. At the time Judge Bell testified he was seventy-six years of age, and more than seventeen years had elapsed since he drew the deeds and acknowledgments. He testified that the deeds were drawn by him for the purpose of placing the title in Charles R. Russell; that after they had been signed and acknowledged he required Fannie Russell and Charles R. Russell to deliver the first one to John M. Mitchell, and he then required John M. Mitchell and Della R.

Mitchell to deliver the second one to Charles R. Russell. But he also testified that he had no positive, or distinct recollection of just where the delivery was made, who was present at the time or any of the facts or circumstances surrounding the transaction, and that he based his recollection as to the delivery of the deeds upon his inflexible rule and habit, when called upon to transfer title, to require the grantor to deliver the deed to the grantee. This testimony, considered as a whole, has no probative force as to the delivery of the deeds or any other fact connected with the transaction. To say that Judge Bell's testimony tends to prove the delivery of the deeds because it was his uniform habit to require a delivery would be to raise a purely collateral issue. Whether he did so on this occasion he does not pretend to state, and his testimony, for that reason, was wholly irrelevant and immaterial. There is therefore no direct evidence tending to prove the delivery of said deeds at or after the time of their execution. Nor is there any proof as to where they were, or who had the possession of them from the time of their execution to the death of Mrs. Russell. At the time of her death they were in the American National Bank with some papers belonging to Charles R. Russell, but when they were put there does not appear. John M. Mitchell, the husband of the defendant Della R. Mitchell and president of the American National Bank, testified that after the death of Mrs. Russell, Charles R. Russell called for papers kept in the bank which belonged to him, among which were these deeds, saying that he wanted to have his deeds recorded, and in about ten days he returned them, with an endorsement showing that they had been filed for record. There is also evidence to the effect that after the execution of the deeds Charles R. Russell, the husband, paid the taxes and made valuable improvements on the property, collected the rents and exercised other acts of ownership over the property. From the foregoing facts an inference might be drawn that the deeds were delivered, but the fact that he was the hus-

band of Fannie Russell and the known manner in which husbands often treat the papers and property of their wives, there being nothing to show that he claimed the property or possession of the deeds adversely to her, greatly weakens the force of any such inference if it does not wholly destroy it.

The testimony upon the hearing was taken without a reference to the master, but a considerable part of it was by deposition. Recognizing the rule that the findings of the chancellor should not be disturbed by a court of review unless the weight of the testimony is manifestly against such findings, and that due weight should always be given to the fact that the court, who saw the witnesses and heard them testify, could better judge of the weight to be given to their evidence than can this court upon an examination of the printed evidence alone, still we feel constrained to hold that the clear preponderance of the testimony in this record proves that the deeds were never delivered, and that the parties at the time of their execution did not intend that the title should absolutely and irrevocably pass from Fannie Russell to Charles R. Russell. In order to constitute a valid delivery of a deed of conveyance the grantor must absolutely divest himself of any control over the same, and if he or she retains any custody or control over it, or if it is not actually delivered but is to become effective only upon certain contingencies, there is no valid delivery. The delivery must be unconditional unless in escrow. Thus, there is no delivery where there is a reservation of control. Nor can there be a partial delivery. (*Otis* v. *Spencer,* 102 Ill. 622; *Stinson* v. *Anderson,* 96 id. 373.) If there is an actual, unconditional delivery to the grantee the title passes, even though there may be an understanding between the parties that a condition or conditions shall attach,—and this, for the reason that there cannot be a delivery to the grantee as an escrow. The law applicable to the facts of this and every other case where the question of the delivery of a deed of conveyance is in

issue is concisely stated in *Oliver* v. *Oliver,* 149 Ill. 542, as follows (p. 547) : "The fact that a grantee in a deed may, after the execution of the instrument, take it into his hands does not, of itself, establish a delivery. Nor would the fact that a deed was taken by the grantee from the custody or possession of the grantor after its execution constitute a delivery. No particular form is necessary to constitute a valid delivery. It may be by acts without words, or by words without acts, or by both. Anything which clearly manifests the intention of the grantor, and the person to whom it is delivered, that the deed shall presently become operative and effectual,—that the grantor loses all control over it and that by it the grantee is to become possessed of the estate,—constitutes a sufficient delivery."

Our consideration of the testimony in this record as to the validity of the deeds of February 1, 1888, and of the extended arguments of counsel for the respective parties, has led us to the conclusion that those deeds were never actually delivered and were not intended by the parties as present conveyances of the title, but they were, as before said, intended to serve the purpose of vesting the title upon the death of Mrs. Fannie Russell, and that during her lifetime it was intended that the title should remain in her. She declared in the most solemn manner that she was the owner of the property only a short time prior to her decease, and the fact that her husband exercised control over the property was not inconsistent with her ownership. They doubtless understood that they had a mutual interest in taking care of and preserving the property, with the intention that the title should remain or become vested in the survivor. However honestly they may have intended these deeds of conveyance to take effect upon the death of Mrs. Russell, the law is too well settled to justify the citation of authorities that the title could not be conveyed in that manner.

As to the validity of the deed of May 24, 1904, by Charles R. Russell to Della R. Mitchell, from what has been

already said it was ineffectual to pass the title to the lots described in the deeds of February 1, 1888, for the reason the title to that property never vested in Charles R. Russell. But as to the strip of ground ten feet and six and one-half inches in width, also described in that deed, a different question is presented. As to the execution and acknowledgment of that deed there is no controversy, but complainants contend that it was never delivered, but was placed in the hands of John Mitchell, the husband of Della R. Mitchell, to be delivered to her, provided Charles R. Russell did not change his mind as to the disposition he desired to finally make of his property. They introduced a number of witnesses who testified to conversations with Mr. Russell after the execution of that deed, in which he stated that he had still control over his property and spoke of the deed as a will. He seems to have made these statements to several witnesses. Mathias S. Metzger testified that he was mayor of Mt. Carmel and knew Charles R. Russell in his lifetime; "about four weeks before he died he told me he had control of his property and had a right to change it whenever he wanted to." Mrs. Mary Parkinson also testified: "I knew C. R. Russell in his lifetime; he told me in August before he died in November that he had made his will in favor of Mrs. Mitchell; I replied that I did not think that he treated his boys right; he said he had the control during his lifetime, and if the boys did to please him he might change it, and he hoped to do so; his property was in such condition that he could do what he pleased with it; Mrs. Fannie Russell, his wife, was my cousin." Justice Reel also stated: "I knew C. R. Russell all my life; speaking about the possession of his property, the last time I talked to him, he asked me about the settlement of the estate I was interested in, and said he had made some papers but they were not satisfactory, and he had them so he could change them at any moment; that he had the right use of his mind." As against this and other like testimony there is positive evidence of not only

John M. Mitchell but of several other disinterested witnesses of whose competency there can be no question, to the effect that about eleven o'clock in the forenoon of the day the deed bears date C. R. Russell came into the American National Bank and said to Mr. Mitchell: "John, I have the deed made out to Mrs. Mitchell; I fixed my property the way I wanted it; I made the deed to Mrs. Mitchell." And that Mitchell replied: "Are you sure you have it the way you want it? If not, I will put it in the safe and you can think about it a few days." Mr. Russell replied: "It is the way I want it; take it home and give it to Della when you go to dinner; mark on the deed the day it is delivered." Mitchell thereupon wrote upon the back of the deed the words, "Delivered May 24, 1904." It also appears that when Mitchell went to dinner he put the deed in his pocket and took it with him, and it was afterwards placed among his private papers. The defendants also introduced evidence of conversations by Charles R. Russell in which he stated that he had made disposition of his property. As to this deed there is abundant direct evidence of its delivery, at least to John M. Mitchell for the grantee, Della Mitchell, with circumstances strongly tending to show that it was actually given to her by her husband. There was a good delivery either to the grantee herself or to a third person for her, the grantor parting with all control over the same. The deed in question is therefore valid as to the strip therein described but is invalid as to the other premises.

The decree of the circuit court will be reversed and the cause will be remanded, with directions to enter a decree of partition, in conformity with the prayer of the bill, as to that portion of the premises described in the first mentioned deeds.

*Reversed and remanded.*