FLORENZ BENNER, Appellee, *vs.* KATHERINE BAILEY *et al.*
Appellants.

*Opinion filed April 23, 1908.*

DEEDS—*deed not intended to take effect before grantor's death is invalid.* A deed executed by the grantor to his wife while he was very sick, it being the intention to use the deed instead of a will in case the grantor died, and not to presently pass title to the wife, is invalid, and the grantor is entitled to have the deed set aside as against relatives of the wife, who found the deed after her death and had it recorded.

APPEAL from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

RITSHER, MONTGOMERY, HART & ABBOTT, for appellants.

WILLIAM A. DOYLE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

April 6, 1907, appellee filed his bill in chancery in the superior court of Cook county to set aside and declare void, as a cloud upon his title, a quit-claim deed executed by himself, dated January 14, 1905, purporting to convey certain real estate in Chicago to his wife, Mary A. Benner. Answer and replication having been duly filed, evidence was heard by the chancellor, and after arguments a decree was entered setting aside said deed and declaring it null and void, as against appellee, as a cloud upon his title, and ordering that it be delivered up for cancellation. From this decree an appeal was taken to this court.

Appellee and his wife, Mary A. Benner, were an aged couple, who had lived together for many years. The only children born to them died in infancy. For some time previous to January, 1905, appellee appears to have been in poor health. During this month he and his wife were stopping

with a Mrs. Reis, on Indiana avenue, in Chicago. On January 14, 1905, he was dangerously ill and it was thought he might not live from day to day. Samuel M. Booth, a member of the Chicago bar, who had been attorney for appellee and his wife for many years, went to see Mr. and Mrs. Benner at their request. He testified that when he reached the house he was met by Mrs. Reis and shown into the bedroom on the second floor, where appellee was lying in bed, and Mrs. Benner told him that her husband was very sick and she was afraid he might die, and that she wanted a deed made out for the property in question, so that in case he did die it would not be necessary to probate his estate and that if he got well it would not amount to anything. After some further talk appellee told Mr. Booth that he had better make out such a deed, and upon searching among the papers the attorney found a description of the property and drew the quit-claim deed in question. He then took it to Mr. Benner, who signed it while sitting propped up by pillows in the bed. After taking the acknowledgment the attorney left the deed lying on the table. Appellee said, just before he left, "I hope to get well," and finally witness said, as he was about going away, "Well, I hope there will be no occasion to use the deed," and Mrs. Benner said, "I hope so too, of course, but it would be just as well to be prepared." In the conversation as to avoiding probate costs Mr. Booth said jokingly to Mrs. Benner, "Yes, there you go again; trying to beat the attorney out of a fee," and she replied that she was not looking to benefit any attorneys. Booth testified that he knew the deed had to be delivered before death in order to pass title, but that nothing was said about the delivery of the deed at the time it was executed, or at any time, with reference to its being effective. The wife of a brother of appellee testified that shortly before this deed was drawn she had a talk with appellee's wife, who asked, "What do you think about Florenz making a deed of the property over to me?" and witness said, "I think it

will be all right." Appellee's wife told the witness that she did not think appellee was going to recover from the attack and that a deed would not be as much trouble as a will, and if the deed was made it would not go on record, except appellee died.   A Mrs. Schmidt, who knew appellee and his wife for many years, testified that some time in January, 1905, she was visiting them and Mrs. Benner told her about having the deed drawn conveying the property to her, but said it was only to be recorded in the event of Mr. Benner's death.

This is substantially all the evidence in the record as to the execution and delivery of the deed.   Appellee recovered slowly from the attack and is still living.   His wife died very suddenly January 6, 1907, where they were then living, in Calumet, a suburb of Chicago.   On the day of the wife's death appellee was taken to his brother's home in Chicago, where he has since resided.   He was still very sick when his wife died.

Appellants are the sister, brother, and widow and children of a deceased brother, of appellee's wife.   When the appellee left the home after the death of his wife some of them were left in charge, and that day, or shortly thereafter, in looking through the drawers of an unlocked bureau, they found the deed in a sealed envelope underneath some underclothing of the deceased wife, and in the same drawer they also found a deed running to appellee and Michael Smith for a lot in Graceland cemetery.   The deed to the property here in question, on the advice of a lawyer, was very soon thereafter recorded by some of the appellants.   The record shows that the receipts for taxes on this property were issued in the name of appellee from the time of the execution of the deed until his wife's death.   It is also shown that appellee's wife had other real estate in her own name, which she looked after herself.

To constitute the valid delivery of a deed the grantor must absolutely divest himself of all control over the same,

234—6

and if he retains any custody or control over it, or if it is not actually delivered but is to become effective only upon the grantor's death, there is no valid delivery. (*Russell* v. *Mitchell,* 223 Ill. 438.) A deed must take effect upon its execution and delivery, or not at all. A deed of land which is not to take effect until the death of the grantor is void, as being an attempt to make a testamentary disposition of property without complying with the Statute of Wills. (*Wilson* v. *Wilson,* 158 Ill. 567.) If the intended disposition of property is not to take effect in the testator's lifetime but is ambulatory until his death, such disposition is not operative unless it is executed in conformity with the Statute of Wills. (*Oswald* v. *Caldwell,* 225 Ill. 224.) Intent to give effect to the deed is essential to a valid delivery. Giving the grantee of a deed possession thereof for safe keeping does not pass title, where it is the intention of the parties that the deed shall not become effective unless the grantor shall die before the grantee. (*Elliott* v. *Murray,* 225 Ill. 107.) The delivery of a deed is a question of intent. (*Hollenbeck* v. *Hollenbeck,* 185 Ill. 101.) A deed cannot be delivered to the grantee himself as an escrow. (*Baker* v. *Baker,* 159 Ill. 394.) While the law presumes more in favor of the delivery of deeds in cases of voluntary settlements than in cases of bargain and sale, (*Chilvers* v. *Race,* 196 Ill. 71,) yet the presumption of a delivery may be rebutted and overcome by proof of a contrary intention or of acts and declarations from which the contrary presumption arises. (*Price* v. *Hudson,* 125 Ill. 284.) The evidence shows clearly that there was never any intention to deliver the deed here in question; that it was testamentary in character, and not intended to take effect until after the death of the grantor.

The decree of the circuit court will be affirmed.

*Decree affirmed.*