JOHN T. LATSHAW *et al.* Defendants in Error, *vs.* MARY A. LATSHAW *et al.* Plaintiffs in Error.

*Opinion filed December 16, 1914.*

DEEDS—*what necessary to a valid delivery of a deed.* To constitute a valid delivery of a warranty deed reserving no life estate the grantor must divest herself of all control over the same, and if she retains any control or custody of the instrument, or if it is not actually delivered but is to become effective upon the happening of some future event, such as the death of the grantor, there is no valid delivery.

WRIT OF ERROR to the Circuit Court of Edgar county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

W. H. CLINTON, and DYAS & DYAS, for plaintiffs in error.

STEWART W. KINCAID, for defendants in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is a bill in chancery for partition of real estate among the heirs of Mary J. Latshaw, who died intestate August 11, 1913, leaving John T. Latshaw, Agnes Latshaw

Tate, James Latshaw, Mary A. Latshaw and Charlotta Latshaw, her children and only heirs-at-law. The bill alleges that at the time of her death Mary J. Latshaw was seized in fee simple of 28½ acres of land located in section 18, township 13, north, range 11, west, in Edgar county, Illinois. The bill alleges that the five children of Mary J. Latshaw each own an undivided one-fifth interest in said real estate as tenants in common, and that no other person has any interest therein. There is other real estate involved in the partition proceeding, but the 28½ acres above referred to is the only land in respect to which any controversy exists. Mary A. and Charlotta Latshaw, two of the defendants in the bill for partition, filed an answer, admitting the death and intestacy of their mother but denying that at the time of her death she was seized of said real estate, and alleged that the title to the 28½ acres was in Mary A. and Charlotta Latshaw by virtue of a deed alleged to have been executed and delivered to said defendants during the lifetime of their mother. These two defendants also filed a cross-bill, in which they allege that their mother, Mary J. Latshaw, about a year prior to her death, made, executed and delivered to cross-complainants a deed of conveyance to the real estate in controversy, and prayed in said cross-bill that they be decreed to be the sole owners of said real estate, and that the defendants to the cross-bill, who were the other three children of Mary J. Latshaw, have no interest in said real estate. The cross-bill was answered by the three defendants named therein, in which the execution and delivery of the deed by Mary J. Latshaw were denied. The cause was heard upon the issue formed by the answer to the cross-bill, and the sole question in controversy was whether a certain deed which was signed and acknowledged by Mary J. Latshaw in her lifetime was ever delivered to the cross-complainants prior to the death of their mother. The circuit court of Edgar county found against the complainants in the cross-bill and in accordance with the prayer

of the original bill, and granted a partition as therein prayed and dismissed the cross-bill for want of equity. Mary A. and Charlotta Latshaw have sued out a writ of error from this court to review the decree of the court in dismissing their cross-bill and in granting the prayer of the original bill.

The evidence in regard to the execution of the deed to plaintiffs in error discloses the following facts: In the latter part of 1911 Mary J. Latshaw and her daughter Mary, one of the plaintiffs in error, went to the office of James Marley, who was then circuit clerk and recorder of Edgar county, for the purpose of having a deed prepared conveying the land in controversy to the plaintiffs in error. The mother explained to Marley what they were there for, and he asked her if she had the old deed, and she replied that she had not. Marley then requested his deputy, E. E. Fuqua, to look up the record of Mary J. Latshaw's deed and to prepare a deed from the description in the record. Fuqua found the record and prepared a warranty deed purporting to convey the 28½ acres to plaintiffs in error. After the deed was written Mary J. Latshaw signed the same and Fuqua took her acknowledgment thereto. Fuqua and Marley testified that after the deed was completed it was handed to the grantor, and that she thereupon handed the deed to Marley with instructions to keep the deed for her and not to record it until after her death. There is some disagreement among the witnesses as to the exact language that was used by the mother at the time she passed the deed to Marley. In some form of words she caused him to understand that he was not to record the deed but was to hold it for the grantor. In pursuance to the instructions given, Marley took the deed, sealed it in an envelope, marked the name of Mrs. Mary J. Latshaw on the envelope and put it away in the vault. Marley was intimately acquainted with Mary J. Latshaw, and she had advised with him on former occasions in regard to making a deed or a will and he had advised her to make a deed. The signature to the deed was

witnessed by Fuqua and a Mrs. VanDyke, both of whom were deputies in the circuit clerk's office at the time. About a year after the deed was deposited with Marley Mary J. Latshaw called him up over the telephone and asked him to take the deed down to Mrs. Tom Davis and give it to her. Marley did not do so when first requested and soon after she called again and made a similar request. The third time she called Marley and requested him to take the deed over to Mrs. Davis he did so, and he never saw the instrument after that. The evidence shows that Mrs. Davis turned the deed over to the grantor, Mary J. Latshaw, and she destroyed it, and gave as a reason at the time that it was not the way she wanted to dispose of that property. A witness by the name of Hunter testifies that he was in the circuit clerk's office at the time the deed was executed and that the deed was handed to the grantor and then delivered to the daughter Mary, who thereupon handed her mother a dollar or a piece of money, and that the deed was then passed by the daughter to the clerk and deposited in the vault, as stated by the other witnesses. Hunter's version of the transaction is not corroborated by any other testimony in the case. The evidence relied upon to show a delivery outside of the testimony of Hunter consists of the statement of Mrs. Latshaw to various persons that she had deeded the 28½ acres in controversy to the two girls, (meaning plaintiffs in error,) and one witness testifies that Mrs. Latshaw told her she had made the deed and had delivered it to the girls. The evidence shows that after the deed was written and signed the grantor continued in the possession of the property described in the deed, that she collected all the rents therefrom, and that numerous receipts given to tenants for rent were shown to have been written by plaintiff in error Mary A. Latshaw. There was no reservation of a life estate in the deed that was signed in the clerk's office. It purported to be an absolute conveyance of the fee simple title, without restrictions or limitations. There is some testimony

tending to show that Marley, the circuit clerk, had made a statement which, if true, would tend to corroborate the version of the transaction in the clerk's office given by the witness Hunter.

The foregoing is the substance of the testimony bearing upon the question at issue. The law applicable to this question is well settled. To constitute a valid delivery of a deed the grantor must divest himself of all control over the same, and if he retains any control or custody of the instrument, or if it is not actually delivered but is to become effective upon the happening of some future event, such as the death of the grantor, there is no valid delivery. (*Benner v. Bailey,* 234 Ill. 79; *Weigand v. Rutschke,* 253 id. 260.) A delivery of a deed may consist in words without acts or acts without words. It is a question of intention rather than what actually transpires between the parties. After a careful consideration of all the evidence we are of the opinion that the chancellor did not err in finding that there was no valid delivery of this deed. The evidence seems to warrant the conclusion that it was the intention of the grantor to retain control of the deed and the premises until her death, for the purpose of enabling her, in case she should desire to make a different disposition of the property, to do so without consulting anyone else. At the time she signed the deed she manifestly intended that the grantees should have the land at her death but she reserved the right to change her mind, which she did, as is evidenced by her persistent efforts to re-possess herself of the deed and its destruction after it came into her hands.

The decree of the circuit court of Edgar county is affirmed.                        *Decree affirmed.*