(No. 12327.—Decree affirmed.)
John L. O'Brien, Appellant, *vs.* Margaret O'Brien,
Appellee.

*Opinion filed December 18, 1918.*

1. Deeds—*if a deed is delivered grantor cannot subsequently make its delivery conditional.* If a deed absolute in form from a son to his mother is delivered to the latter with the intention at that time of investing her with the title, such title cannot be divested nor the delivery be made conditional by the act of the son, several years later, in securing possession of the deed and writing upon it the words, "Not transferable only in case of death."

2. Same—*when grantor has burden of showing non-delivery.* One who seeks to set aside a recorded deed absolute in form from himself to his mother on the ground that the deed was never delivered to her with the intention of vesting her with the title, has the burden of proving his contention by a preponderance of evidence.

Appeal from the Circuit Court of Whiteside county; the Hon. Frank D. Ramsay, Judge, presiding.

Carl E. Sheldon, and Jacob Cantlin, for appellant.

Henry C. Ward, for appellee.

Mr. Justice Carter delivered the opinion of the court:

This was a bill filed in the circuit court of Whiteside county on August 2, 1917, by appellant, asking that a deed from himself to his mother, Margaret O'Brien, appellee, dated September 20, 1912, and later recorded, be found to have been without consideration and not to have been delivered to her, and that the same be canceled of record. The bill also prayed for an accounting as to rent for the use of the premises. On the hearing in the circuit court a decree was entered June 8, 1918, dismissing the bill for want of equity, from which decree appellant has appealed to this court.

The property for which the deed in question was given consists of a house and lot in Sterling, in said county. It

was purchased in 1905 from one Siebels for $3300, subject to a mortgage of $2000, which was subsequently paid off. Appellant was a railroad engineer, who at the time of the purchase of this property from Siebels was about twenty-one years of age, living with his mother on the premises as a tenant of Siebels. He continued to live there with his mother until his marriage, in October, 1912, and for a few months he and his wife continued to live there with his mother. Since that time he and his wife have lived in Cook county, Illinois. Appellant had a sister aged eighteen and a brother fourteen at the time of the purchase from Siebels, who were not then living at home.

The principal question in dispute is whether or not there was a delivery of a certain deed of the property from appellant to appellee. The testimony as to the circumstances connected with the execution and delivery of this deed is not entirely in harmony. Appellant testified that at and for some time before the purchase he was receiving wages of from $90 to $125 a month, which he had been turning over to his mother to keep for him; that when the house and lot were purchased from Siebels he paid the purchase price over and above the mortgage, except $800 which his mother advanced as a part of the purchase money. He also testified he paid off the mortgage of $2000 from his earnings, from time to time, after the purchase; that his sister had paid as a part of the purchase $150, which he had re-paid her, and that he had been credited with $90 on the rent; that after assuming the first mortgage, and as a part of the settlement of the same, he secured $500 from John G. Wetzel and gave Wetzel a mortgage on the premises for that amount, which he afterward paid out of his own funds. He testified that at the time of the execution of the deed here in question he went to Wetzel, who was engaged in the business of real estate, insurance and loans and apparently was somewhat familiar with the drafting and preparation of legal papers and conveyances, and asked him to draw a deed

to this property conveying it to his mother and to attach thereto a memorandum stating that the deed conveyed the property in trust; that this memorandum was so prepared by Wetzel and attached by means of staples to the deed. It seems to be established by the testimony, although appellant testified he did not remember seeing any such paper, that there was also attached to the deed to his mother the original deed from Siebels to himself; that this deed from Siebels was attached by the same staples claimed to have been used in attaching the memorandum prepared by Wetzel. He further testified that after executing this deed he took it, with the attached memorandum, to his mother and told her to keep it for him; that later he obtained the deed from his mother and wrote across the face of the deed, "Not transferable only in case of death." Wetzel testified that he drafted such a deed and memorandum and that the latter was attached to the deed by staples used in his office, and that the deed from appellant to appellee bore evidence, when presented to him on the hearing, that said memorandum had been so attached to the deed. As Wetzel recalled, the memorandum provided substantially as follows: "This deed to be held in trust and recorded only in case of my death." He further testified that appellant stated, when he came to have the deed prepared, that his occupation was somewhat dangerous and that he wanted to fix up some papers, and that the papers in question were accordingly prepared. Appellant further testified that some time after the deed had been so left with his mother he went to her and asked for the deed, telling her he wanted to prepare a mortgage on the place to help purchase a home for himself and wife in Cook county, and that she put him off, saying she did not have the deed, and he found out afterward that it was in the possession of his younger brother. He testified that he meant by the writing he placed on the deed, to attach as a part of the instrument itself the same condition to the conveyance as he had by the separate memorandum pre-

pared by Wetzel. With this change in the deed he returned it to his mother. The evidence tends to show that he obtained this deed and made the change some two or three years after the deed was originally executed.

Appellee testified, denying in most important particulars the testimony given by appellant as to what he said as to the deed at the time it was handed to her. She testified that appellant handed the deed to her and said he was deeding the place over to her so she would always have a home; that he did not call attention to any attached memorandum, and so far as she knew no such memorandum was ever attached to the deed while it was in her possession; that he did not tell her she was to put the deed away and keep it for him but that she did put it away with her papers in a tin box, and that thereafter, as the record shows, she paid the taxes on the premises; that she never understood the deed was to be held in trust until her son's death; that some years after it was delivered to her appellant came to her and said he wanted the deed for the purpose of preparing a mortgage, and she told him at that time she understood the property was hers; that after appellant got the deed from her and returned it she noticed the words, "Not transferable only in case of death," and showed the deed to her other son and afterward consulted an attorney; that this attorney advised her to have the words on the deed erased, and with her consent he erased the words so written in by appellant, and it is conceded that this attorney would have testified, if called as a witness, that he had so erased these words. Appellee further testified that she paid $800 on the original $1300 of the purchase price and that she later contributed toward the payment of the mortgage, as did also her daughter and younger son, both of whom were then working, the daughter earning $8 a week; that she kept boarders at the time, and that she and all her children had put their money into a common fund, out of which payments were made; that after the purchase she had put $100 into

improvements. She also testified that the deed from Siebels was attached to the deed given by appellant, and that so far as she knew no other paper was attached; that appellant paid her $40 at one time, $25 at another and $25 at another time for the board of himself and wife while they were with her; that she had paid no rent on the house after the purchase from Siebels; that she had never said anything to appellant about his writing the words in the deed.

Thomas J. O'Brien, the other son, testified for appellee that he had contributed $175 toward the payment of the Wetzel mortgage and that the amount had never been re-paid to him by anyone; that he was not present at the time the deed was handed to his mother but saw it shortly after, and there was no paper attached to it except the Siebels deed, fastened by small brass staples; that when he saw it there was no writing on the face of it, but that later, after appellant had obtained the deed and returned it, his mother showed it to him and that it then contained the words, "Not transferable only in case of death;" that afterward it was taken to an attorney and the words erased, and witness then put it in his deposit box at the bank and later recorded it; that what he did with reference to the deed was done in behalf of his mother. He further stated that he had a conversation with appellant concerning the recording of the deed and told him that he could do nothing about it.

Appellant testified in rebuttal, denying the statements made on behalf of appellee as to what was said about the delivery of the deed. He admitted that his mother was entitled to a credit of $800 which she had paid on the premises and had not been re-paid.

From the evidence in the record there can be no serious dispute as to the execution of the deed and the handing of it to the mother or as to the consideration being valid. The only serious question in dispute is as to whether the deed was delivered. The delivery of a deed is essential to its validity. (*Riegel* v. *Riegel,* 243 Ill. 626; *McClun* v. *McClun,* 176 id.

376.) The test on the question of delivery is the intention of the grantor, to be gathered from the surrounding circumstances. Each case must be decided by the special facts of that case. (1 Devlin on Real Estate,—3d ed.—sec. 262; *Riegel* v. *Riegel, supra; Hill* v. *Kreiger,* 250 Ill. 408.) To constitute delivery it must clearly appear that it was the grantor's intention that the deed should pass title at the time and that he should lose control over the same. (*Brown* v. *Brown,* 167 Ill. 631; *Wilson* v. *Wilson,* 158 id. 567.) If the deed is not actually delivered but is to become effective upon the happening of some future event, such as the death of the grantor, there is no valid delivery. (*Wilson* v. *Wilson, supra; Benner* v. *Bailey,* 234 Ill. 79; *Latshaw* v. *Latshaw,* 266 id. 44.) Giving the grantee possession of the deed for the purpose of safe keeping is not a valid delivery, for the law is that there can be no delivery in escrow to the grantee. (*Bovee* v. *Hinde,* 135 Ill. 137; *Elliott* v. *Murray,* 225 id. 107.) The intention to deliver on the one hand and of acceptance on the other may be shown by direct evidence of the intention or may be presumed from acts and declarations of the parties. In like manner presumptions of delivery may be rebutted and overcome by proof of a contrary intention or by acts and declarations from which the contrary presumption arises. *Price* v. *Hudson,* 125 Ill. 284; *Benner* v. *Bailey, supra; Potter* v. *Barringer,* 236 Ill. 224; *Shipley* v. *Shipley,* 274 id. 506.

The testimony as to the intention to deliver is sharply in conflict, as is also the testimony as to what was said and done at the time the son handed the deed in question to his mother, and as to whether or not a memorandum prepared by Wetzel was attached to the deed at the time of the delivery. The burden of proof, beyond question, rested upon appellant to show that there was no delivery of the deed and to show that the memorandum was attached. It needs no argument to show that there was no legal authority for the appellant to write into the deed two years after it was

handed to his mother, if it was then delivered, the words, "Not transferable only in case of death." Counsel for both parties argue at length to show the reasonableness of the testimony on their respective sides and each attempts to show the unreasonableness of the testimony given on the other side. We have given to all the testimony in this record the consideration required for what we deem a proper conclusion in this case, including the argument of counsel for appellant that it would be unreasonable for the mother, after the deed was delivered to her without condition, not to demur seriously about giving it over to her son when he asked for it several years later for the purpose of mortgaging the property, and also the argument that it is unreasonable to believe that if the property was hers she would have delayed recording the deed until nearly five years after it was given to her. The answer of counsel for appellee, in answer to this last argument, we deem meritorious, that she did not record the deed before because she did not want to have trouble with her son, with whom her relations had always been friendly, and did not record it until after the words had been written in and she had been advised by an attorney that they could be erased and they were so erased. It also appears from the evidence that appellant had said and done other things after writing in these words which showed that he was trying to claim the title contrary to her understanding of the terms of the deed, and she almost immediately had it recorded. Stated in the most favorable light for appellant, we think the evidence in the record fails to preponderate in his favor. There is no question that the deed as originally drawn,—leaving out the discussion of the question as to the attached memorandum,—conveyed the property in fee to the mother, and the proof as to the memorandum being attached showing it was a conditional deed, only to be delivered in case of appellant's death, was of such a character as not to justify a decree in appellant's favor on that point.

Appellant having failed to establish, by a preponderance of the evidence, the allegations in his bill, the trial court rightly entered a decree dismissing the bill for want of equity.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*

---

(No. 12345.—Reversed and remanded.)
SAM SGRO, Appellant, *vs.* MICHAEL KAMEES *et al.* Appellees.

*Opinion filed December 18, 1918.*