(No. 15012.—Reversed and remanded.)

MARCIN SZYMCZAK *vs.* WALĘRYJA SZYMCZAK *et al.* Appellees.—(MARY SZYMCZAK, Appellant.)

*Opinion filed February 21, 1923.*

1. DEEDS—*when joint tenancy is severed by deed.* A joint tenancy is severed by a deed by one joint tenant to a stranger, and a re-conveyance by the stranger to said joint tenant does not have the effect of re-establishing the joint tenancy.

2. SAME—*deed delivered to grantee is presumed to convey present interest—escrow.* A deed voluntarily executed and delivered to a grantee is presumed to convey a present interest, and the burden rests upon anyone averring a different intention to prove such by a preponderance of the evidence as a deed cannot be delivered to the grantee as an escrow, to take effect upon a condition not appearing on its face, and it becomes absolute at law unless delivery is made to a stranger.

3. SAME—*delivery is a question of intention.* The delivery of a deed, which is necessary to give it binding effect, is a question of intention.

4. SAME—*what is not sufficient to overcome presumption of effective delivery to grantee—joint tenancy.* Where a mother executes and delivers a deed to her sons, the presumption that she intended the deed to have a present binding effect is not overcome by evidence tending to show that the conveyance was made to pass her interest in the property to her sons at her death, which she supposed was very near, instead of having it go to her joint tenant, and such deed severs the joint tenancy although the grantees promise to re-convey if the grantor recovers.

5. SAME—*validity and effect of delivery are not affected by the grantor's continued possession—mental reservation.* Where a deed is absolute in form and conveys the property without reservations, the fact that the grantor continues in possession of the property and continues to manage it after the delivery of the deed does not affect the delivery; nor will a mental reservation by the grantor, contrary to his words and acts, invalidate a delivery.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

HUGO J. THAL, for appellant.

BEACH & BEACH, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

The appellant seeks review of a decree of the circuit court of Cook county in a partition suit in which Marcin Szymczak, her father-in-law, filed the original bill on December 31, 1918. During the hearing on the bill and answer Marcin died. On February 14, 1920, the appellant, by leave of court, became a party complainant and filed her supplemental bill alleging that while the original bill and answer thereto were pending on reference to the master, and after considerable evidence had been taken, the original complainant, Marcin Szymczak, died, leaving a last will, in which he devised and bequeathed to appellant the sum of $1500 to be invested for the benefit of her three children, Marcin's grandchildren, and also to her the rest and residue of his real and personal property, nominating her as executrix. The original bill set out that the property, described as lots 16, 22 and 23 in Ward's subdivision in the city of Chicago, was owned in fee by Marcin and his sons, John, Wladyslaw and Frank; that on August 12, 1902, he had purchased lot 16, taking a deed thereto to himself and his wife, Waleryja, an appellee herein, as tenants in common; that on September 2, 1905, he purchased lots 22 and 23, taking thereto a warranty deed to himself and his wife as joint tenants; that the title of John, Wladyslaw (hereinafter referred to as Walter) and Frank was obtained by warranty deed dated May 1, 1916, from Marcin's wife and mother of the grantees, by which deed she conveyed to them her undivided one-half interest in lots 16, 22 and 23; that Marcin did not join in the execution of this deed; that he

and his wife were living separate and apart, and had been since February, 1915, but were not divorced. The original bill also alleges that Marcin's wife on May 1, 1916, executed a trust deed to another son, Stanislaw, purporting to secure a note for $1000; that a portion of the building on lot 22 was the homestead of Marcin and his wife; that he is entitled to the undivided one-half interest in all of these lots in fee simple and an inchoate right of dower in the other undivided half, all subject to the inchoate right of dower of his wife and the estate of homestead in lot 22; that his sons John, Walter and Frank are each entitled to an undivided one-sixth of all of the premises in fee simple, subject to the inchoate right of dower of Marcin and the incumbrances set out in the bill; that his wife is entitled to an estate of homestead in lot 22 and an inchoate right of dower in the undivided one-half interest of Marcin, and that the son Stanislaw has an interest in the undivided one-half previously owned by Waleryja in all of said property as grantee in the trust deed and owner and holder of the note secured thereby. The bill prays partition.

The supplemental bill contains, substantially, the same allegations as to the rights and interests of the parties except as hereinafter noted, and that the supplemental complainant has become entitled to the interest of Marcin, the original complainant, in and to the premises described in the bill. The supplemental bill also avers that the sons John, Walter and Frank have conveyed their interests in the premises to their mother, Waleryja, but that Frank, notwithstanding the deed made by him, still retains an interest in the premises for the reason that he was a minor at the time of the making of the deed and incapable of making a conveyance of real estate; also that the $1000 note executed by the mother to Stanislaw has been satisfied and canceled though the trust deed has not been released. The supplemental bill avers that the widow has a dower right in the interest of the supplemental complainant and a home-

stead in a portion of lot 22, and prays that partition be had, that the homestead of the widow be set off to her and her dower assigned.

The defendants answered the supplemental bill, and Waleryja, Walter and John Szymczak denied any right of the supplemental complainant in the premises, for the reason that the warranty deed executed by Waleryja to her sons John, Walter and Frank was executed by her in contemplation of immediately impending death, as she then verily believed; that there was no consideration for the deed and it was never delivered; that after the recovery of Waleryja from her illness her sons re-conveyed their interests to her, and by reason of these facts the deed never became effectual as a conveyance.

On April 14, 1920, Waleryja Szymczak filed her cross-bill, alleging that prior to the death of Marcin Szymczak the title to lots 22 and 23 was held by him and the cross-complainant as joint tenants and not as tenants in common; that a certain note and trust deed which had been given as a lien on lot 23 was paid off by the cross-complainant without the assistance of Marcin. The cross-bill contains the same averments as are found in the answer to the original and supplemental bills pertaining to the circumstances of her making the deed and note and trust deed to all of the premises to her said sons, and that by reason of the death of Marcin she became vested with title to all of lots 22 and 23 in fee simple, clear of any claim whatever of the supplemental complainant, Mary Szymczak. The cross-bill prays that cross-complainant be found to be the owner in fee simple of said lots and of an undivided one-half of lot 16 as tenant in common, with right of dower therein, and that the deed from her to her sons may be declared to be a cloud upon her title and removed as such.

Appellant answered the cross-bill, denying the material averments thereof, and on replication being filed the cause was referred to the master, who found that the deed made

by Waleryja Szymczak on May 1, 1916, was made for the purpose of giving title to the property to her sons, and that it severed the joint tenancy up to that time existing between her and her husband as to lots 22 and 23, and found the issues in favor of the supplemental complainant, and recommended a decree in accordance with the prayer of the supplemental bill. On hearing on exceptions the chancellor sustained the same, holding that there was no delivery of the deed of May 1, 1916, and no intention on the part of Waleryja that there should be an immediate conveyance of her interest but that the same was an attempted testamentary disposition, and decreed that partition be had of lot 16 held by Marcin and Waleryja Szymczak as tenants in common, and that the title to lots 22 and 23 be in Waleryja, and that the deed of May 1, 1916, be removed as a cloud on the cross-complainant's title. The decree also finds that Waleryja Szymczak occupied the whole of lot 22 as a homestead.

The principal assignments of error argued relate to the holding of the chancellor concerning the deed of May 1, 1916, and the principal question in the case is whether or not this deed had the effect of severing the joint tenancy which had up to that time existed between Marcin Szymczak and his wife, Waleryja. A deed by a joint tenant to a stranger severs the joint tenancy, (*Lawler* v. *Byrne,* 252 Ill. 194,) and if the deed of May 1, 1916, was a valid conveyance of the interest of Waleryja, the effect of it was to sever the tenancy, and a re-conveyance to her by her sons did not have the effect of re-establishing the joint tenancy. This appears not to be questioned by appellees, but their contention is that the deed of May 1 was not a valid deed and was not delivered; that it was an attempted testamentary disposition. In cases of a voluntary execution of a deed and the delivery of it to the grantee the presumption arises that it was delivered with the intention to convey a present interest, and the burden rests upon one who avers a different intention to prove such by a preponderance of

306—35

the evidence. (*O'Brien* v. *O'Brien,* 285 Ill. 570; *Valter* v. *Blavka,* 195 id. 610; *Reed* v. *Douthit,* 62 id. 348.) The rule is established in this State that a deed cannot be delivered to the grantee as an escrow, to take effect upon a condition not appearing upon the face of the deed, but such deed becomes absolute at law unless delivery is made to a stranger. (*Ryan* v. *Cooke,* 172 Ill. 302; *Weber* v. *Christen,* 121 id. 91; *Stevenson* v. *Crapnell,* 114 id. 19; *McCann* v. *Atherton,* 106 id. 31.) The delivery of a deed is necessary to give it binding effect, and delivery is a question of intent. (*Jordan* v. *Davis,* 108 Ill. 336; *Ryan* v. *Cooke, supra.*) With these rules in mind we proceed to a consideration of the evidence concerning the making of the deed of May 1, 1916.

There is no controversy of fact as to the making of the deed and note and trust deed. It is not disputed that the note and trust deed were not delivered and were canceled, or that after the recovery of Waleryja, and while this cause was pending, the sons re-conveyed to her. Frank became of age during the pendency of the suit and made another deed to his mother. The issue of fact rests on the delivery of the warranty deed.

Otto H. Beutler, an attorney at law, testified that on the first day of May, 1916, he was called to the home of Waleryja Szymczak and found her very ill; that her sons John, Walter and Frank were present, and he says: "She informed me that she had been advised by her physician that she was in a very serious condition and was expected to die most any hour or day. She asked me to draw a will that in case of her death her half of the property would go to the four boys. I told her that it would be useless to draw a will in such case as the property was in joint tenancy; that a will would have no effect upon the property whatsoever, but the title would go, upon her death, to her husband. We talked the matter over, and I told her the only way we could do that would be to make a deed from

her to the sons, and that in case she would not die that her sons could convey this property back to her." The witness further testified. that she told him that she wanted to give her son Stanislaw the sum of $1000 and the rest of her property should go in equal shares to John, Walter and Frank; that he advised her to make a note and trust deed payable to Stanislaw for this sum and to convey one-half of her real estate to the three sons. He further says: "I called her three sons in the room and explained the matter to them; that in case the mother would not die this property should be conveyed back to her; that I could not make a will, and they all expressed their satisfaction with it." The witness testified as to the preparation of the note and trust deed and the signature and acknowledgment of Waleryja to the same, and says: "I also at the same time prepared a warranty deed conveying the undivided one-half of the property described in the bill of complaint to her three sons [naming them.] The warranty deed was signed by her at the same time. She was in bed and I called in two witnesses to witness her signature. I took her acknowledgment, and she handed the deed over to one of the sons,— I don't remember which one it was,—and I told them, and she told them, that that would be their property in case she would die. In case she did not die this property should be re-conveyed to her. I took the warranty deed and note and trust deed home on the very same day. I filed the deed for record on the same day." He also testified that after recording the deed it was returned to him and that he kept it from that time on in his safe; that the sons did not have it in their possession after it came back from the recorder's office.

The son Frank testified that he knew the time when his mother made the deeds and that she said she was going to do it; that after his mother recovered she continued to manage the property as she did prior to her illness. The son Walter testified that he first learned that a deed had

been made to the property in the latter part of July, 1918. The son John testified that he was in the store at the time the deed was made and was called into the room; that his mother was in bed, and she handed him a piece of paper and said, "If I die this property will belong to you boys, and if I don't die but recover, this property shall remain as it is;" that he did not look at the paper to see what it was and did not know what it was; that he did not learn that the paper was a deed until August, 1918; that he gave the deed to Beutler, the attorney, and did not know that it was recorded; that there was no change in the property after his mother's recovery.

Waleryja Szymczak, cross-complainant, testified that she remembered the circumstances of the signing of the deeds and note; that she signed them because when she died she wanted her sons to get part of the property; that she only intended to deliver the trust deed in case she should die; that she signed the warranty deed at the same time she signed the trust deed. In answer to the question as to why she signed this deed she said: "I was very sick then; the doctor told me it is impossible to recover; I expected to die." She was asked, "And was that the reason why you executed this note and trust deed and warranty deed,—because you expected to die?" and answered, "Yes; I had four sicknesses at that time."

This is all of the evidence pertaining to the execution of the deeds and note and the recording of the deeds. The testimony of the sons Walter and John that they did not know that a deed was being made is directly contradicted by that of Beutler, who was solicitor for the cross-complainant at the time of the hearing, and who is corroborated by the son Frank by his testimony concerning his knowledge that a deed was being made.

At the close of the taking of the testimony the appellant moved to exclude the testimony of Waleryja Szymczak from consideration, for the reason that she having filed a

cross-bill subsequent to the death of the original complainant, Marcin Szymczak, to which the appellant was defending as heir and devisee of a deceased person, was not a competent witness. While the competency of her testimony in support of her cross-bill seeking affirmative relief may under these circumstances well be doubted, we are of the opinion that, even considering her testimony, the record does not overcome the burden resting upon her to prove that the deed in this case made, executed, delivered and recorded was not delivered with intention to pass title. Her attorney testifies, and it is not disputed, that she sought his advice as to how she could defeat her husband's rights in this property. He told her that a will would be ineffectual. It was her evident purpose to do whatever was necessary to prevent the property going to her husband, as surviving joint tenant, on her death, which she says she believed was about to occur. It seems quite evident, therefore, that the attorney advised her, as he testified, that the only way she could defeat her husband's rights was by deeding the property to her sons in her lifetime; that she must make a deed of this property to her children, and that in event of her recovery it could be re-conveyed to her. He testified clearly and positively that he called in the sons and explained to them what was being done, and that they would be expected to re-convey the property to her upon her recovery, and that they agreed so to do. This shows an intention to make a present conveyance. Obviously, if this were an attempted testamentary disposition no re-conveyance would be necessary. Her attorney evidently knew that an attempted testamentary disposition would not have the effect of defeating her husband's interest in the estate, and it may not be presumed that her counsel would advise, nor that she would do, an utterly useless thing. Moreover, such an attempt on her part would be directly contrary to the advice of her counsel, who told her that the only way that she could have her interest in the property pass to

her sons was by making a deed to them. Nowhere in the record does it appear whether Beutler was told to record the deed, but it does appear that after having been delivered to the son John it was by him turned over to Beutler, who took it away and recorded it. We are of the opinion that the clear and unequivocal testimony· of her attorney in this case, who has no interest in the outcome, is of greater force than that of the sons, who are interested and who claim they did not know what the instrument was, and that of the cross-complainant, who, if her testimony is at all competent, now says that she did not intend to make an absolute conveyance of the property. It is a rule in this State that even though the grantor continues in possession of the property conveyed and continues to manage it after the delivery of a deed which is absolute in form and conveys the property without reservations, this does not affect the delivery; nor will a mental reservation by the grantor, contrary to his words and acts, invalidate a delivery. *Hudson* v. *Hudson,* 287 Ill. 286; *Moore* v. *Downing,* 289 id. 612; *Kelly* v. *Bapst,* 272 id. 237; *Ward* v. *Conklin,* 232 id. 553.

The circumstances of this case are not unlike those of *Patterson* v. *McClenathan,* 296 Ill. 475. In that case the testimony showed that Mrs. McMillan desired to so dispose of her property that none of it would descend to her husband's heirs. She consulted McClenathan, the cashier of the bank where she transacted business, and asked him whether or not some arrangement might be made so that she could dispose of her property in such a way that it would not reach her husband's heirs. McClenathan consulted an attorney, who advised that this could not be done by will, as her husband might renounce, and suggested that the real estate be conveyed to a trustee, which was done, the attorney explaining to her that the deed must be delivered in order to make it effective. It was urged in that case that the deed and trust agreement were not delivered

in the manner required by law but amounted to a testamentary disposition of the property, but it was held that it being established that she desired to so dispose of her property that none of it would reach her husband's relatives and had consulted an attorney and was advised as to how this might be done, such facts, in addition to the fact that she made the deed and handed it to the grantee with directions to have it recorded, were sufficient to show a delivery. While that case differs from the case at bar in that in the instant case there is no evidence of directions as to recording, yet it was turned over by the grantee to whom it had been delivered, to the attorney and by him recorded on the same day. His actions are entirely consistent with the advice he gave with reference to the only method in which she could accomplish her desired purpose, to-wit, to defeat her husband's interest as survivor. She states she believed she was going to die, and she evidently had given up all hope of living. She says she made the deed because she believed she was going to die. The circumstances of this case tend to establish that she made it for the purpose of passing the title to her sons, with the promise on their part to re-convey it to her in case she did recover. The fact that they promised to re-convey at a later date in case of her recovery from illness does not affect the absolute character of a deed delivered under such circumstances.

We are of the opinion that the finding and recommendation of the master were correct, and that it was error on the part of the chancellor to sustain exceptions thereto and to hold that Waleryja Szymczak was the owner in fee of lots 22 and 23.

The decree is therefore reversed and the cause remanded, with directions to enter a decree in conformity with the prayer of the supplemental bill.

*Reversed and remanded, with directions.*