## TABITHA CHEW *against* THOMAS W. CHEW, and others.

A devise by a man to his wife during her natural life, and after her death, to one of his sons, and three daughters, to hold it during their single lives, and in case my said children should marry, or my son Robert die, without issue, then and in that case, it is my desire that my son Walter have and enjoy the whole of said land, to him, his heirs and assigns forever. Robert had an estate, in fee, in the lands.

When his wife was entitled to dower therein.

THE appellant is the widow of Robert Chew, and filed her bill of complaint in the court of chancery, claiming dower in

certain lands, an estate in which was devised to her husband, by the will of John Chew, dated the 9th, May, 1815.

The clause in the will is in these words : "I give and bequeath unto my wife, Elizabeth Chew, all my lands during her natural life, and after the death of my said wife, I give and bequeath all the said lands, to my son *Robert Chew*, and my daughters Anne, Artridge, Elizabeth and Agnes Chew, to have and to hold the same *during their single lives*; and in case my children here mentioned, should marry, or my son Robert should die, without lawful issue, then and in such case, it is my desire that my son Walter Chew, have and enjoy the whole of said lands, to him, his heirs and assigns, forever. It is further my will and desire that eight acres of the above mentioned lands, embracing the saw-mill and mill seat, be laid off by my son Walter, as soon as convenient after my death, for *his immediate use and benefit*, but that he be debarred from selling or disposing of the same, until in possession of my whole landed estate, as above recited.

The defendants in their answer denied that the complainant was entitled to dower, and also that her husband had title to the land. This being denied, the complainant instituted an action at law, in Prince George's county court, for the recovery of her dower; suit brought 22nd September 1848; and verdict April term 1850, for the defendant. Appeal by the demandant; and in the exception which the appeal brought up for review, it is stated that the testator died in 1815; the demandant offered in evidence the will containing the above clause, and then proved that the widow of the testator had the possession of the lands until her death, when Robert and the daughters, named in the will, took possession. That Robert married the demandant in 1828, and had issue at his death. That all the daughters except Elizabeth and Anne died before the year 1838, when Robert died : Ann died in 1846, after the bill for dower was filed. The court at the instance of the defendant instructed the jury, that the demand-dant is not entitled to recover in this action for dower in the said lands, because there was no evidence to show that her said

husband Robert, was seized in his lifetime of such an estate in said land, as will entitle his widow to dower.

Was this instruction correct?   Is the only question upon this appeal.

This case was argued before LE GRAND, C. J., and EC-CLESTON and MASON, J.

By *Causin* and *Miller* for the appellant, and *Pratt* and *Mackubin* for the appellee.

On the part of the appellant it was contended, that by a true construction of the will, Robert Chew was seized of an estate tail, converted under the act of Assembly into an estate in fee, of which his wife was dowable.   The estate is not a joint tenancy for life in Robert and his sisters, with the inheritance in Robert, but an absolute estate tail in Robert, encumbered only with the conditional life estates in the sisters, and these life estates to cease when they married;  At any event, at the time the bill was filed, the appellant was entitled to be endowed of three-fifths of the undivided real estate, and to dower of the other two-fifths as they fell in.

The word "or," is to be construed "and."   7 *G.*, 197, and if Robert had died in the lifetime of his sisters, without issue, the sisters would lose their estates.

Walter was not to sell.   This to keep the whole estate undivided.

A devise for life to A, and if A die without issue, gives him an estate tail.   *Newton and Griffith*, 1 *H. & G.*, 115.   6 *G. & J.*, 236.   Robert had at once a fee-simple in one-fifth part.   According to *Park, p.* 5, in 11 *Common Law Library*, there must be a separate estate in reversion in the husband. Same author, page 31, says, a seizin in law is sufficient.   See, also, pages 39, 41, 56.   The interposing life estate, to deprive the widow of dower, must be a life estate in another.   *Park* 57. The joint estate here is not a joint tenancy.

See 2 *Cruises Dig.*, 328.   2 *Tucker's Blk.*, 181.

In 3 *Gill* 310.   There was a use for life in William, and

the husband had only the reversion. *Park* 56, 57. Dower attaches when the outstanding life estates expire.

See 9 *Eng. Ch. Rep.*, 475. 3 *Bos. & Pul.*, 651. *Note* 22 *Pickering*, 283.

*Causin* cited for appellants. 6 *H. & J.*, 161. 2 *H. & G.*, 265, 273.

*Pratt* for appellee: Referred to 11 *Law Lib.*, 5. No dower of a joint estate. 37 of same authority. No dower if life estate existed during coverture. *Park.* 53. Freehold and inheritance are necessary, and if an estate intervene there is no dower. *Park.* 57. 4 *Kent Com.*, 37, 38, 39. 3 *Gill*, 310.

The widow can claim no dower in the part owned by her husband, the land descended from the testator to several chil·dren.

*Mackubin* on the same side referred to 6 *G. & J.*, 237. As to a devise in joint tenancy: 2 *Cruise Digest*, 325, sec., 3. 4 *Cruise P.*, 241, sec., 46. 3 *H. & J.*, 148, 149. 16 *Com. Law Reports*, 293, 294. 3 *Sargeant and Rawle*, 393. 2 *Yates*, 659.

Whenever an estate is given to several, they are joint tenants, unless there be some expression, showing an intention to give an estate in common.

*Causin* for appellant.

The intention must govern ; the general intent must prevail, even if the minor intent be different. *Tyler vs. Digges*, 6 *H. & J.*, 374. Robert was the favorite. Walter, even in the eight acres, is to have but a life estate. A devise for life, and if he die without issue. 1 *P. Wm.*, 664. *Crabb on Real Property*, 86, 87, *in 55th Law Library*. 22 *Pick.*, 283.

If this is a joint tenancy, it must be admitted the widow has no title to dower.

As to joint tenancy, *Crabb on Real Property*, 940. There must be a right of survivorship if it be a joint tenancy.

Chew *vs*. Chew.

Robert has an estate tail, and the sisters are entitled only during their single lives. 5 *Binn.*, 16, 18, 22.

Dower is favored. 3 *Atk.*, 191, *sec*. 6. See 6 *H. & J.*, 61. 2 *H. & G.*, 265.

The opinion of the court was delivered by MASON, J.

This case depends upon the construction of the following clause in the will of John Chew, namely : "I give and bequeath unto my wife, Elizabeth Chew, *all my lands*, during her natural life, and after the death of my said wife, I give and bequeath all the said lands to my son, *Robert Chew*, and my daughters, Ann, Artridge, Elizabeth and Agnes Chew, to have and to hold the same *during their single lives ;* and in case my said *children*, here mentioned, should marry, or my son Robert should die without lawful issue, then, and in such case, it is my desire, that my son, Walter Chew, have and enjoy the whole of said lands, to him, his heirs and assigns, forever. It is further my will and desire, that eight acres of the above mentioned lands, embracing the saw-mill and mill-seat, be laid off to my said son Walter, as soon as convenient after my death, for his *immediate use and benefit*, but that he be debarred from selling or disposing of the same, *until in possession of my whole landed estate, as above recited.*"

The question directly submitted to our consideration is, did Robert Chew take such an estate under the above clause in the will, as would entitle his wife upon his death to dower therein ?

The evidence offered in the case consisted of the will of John Chew, which has already been referred to, of the fact that the said John Chew died in 1815 ; that his widow held the lands in question until her death, at which time the daughters, and Robert, who are named in the will, took possession of the same ; that Robert married the demandant in 1828, and died in the year 1838, having issue; that Elizabeth and Ann Chew, two of the daughters named in the will, died before Robert, but that the two other daughters survived Robert, and that one of them did not die until 1846, after the demandant had filed her bill for dower.

Upon this proof, the defendants prayed the court to instruct the jury : "That the demandant was not entitled to her dower in said lands, because there was no evidence to show that her said husband, Robert Chew, was seized in his lifetime of such an estate in said lands as would entitle his widow to dower therein."

The court gave this instruction, and the plaintiff excepted.

It is a well established and long standing rule in the construction of all testamentary instruments, that the intention of the testator as expressed by the language of the will, shall prevail, if consistent with the settled rules of law, and that the most liberal and enlarged interpretation will be given to all such instruments, in order to effectuate the manifest design of the testator.

In order to sustain the instruction given by the court below, which forms the ground of the plaintiff's exception, it must be conceded, that Robert Chew took no higher or greater estate in the lands devised by his father, than that taken by his sisters, and that they all took as joint tenants with the right of survivorship. We cannot give to this will a construction which will lead to any such conclusion. Nothing can be plainer than that the testator designed to make a difference among his several children, and that the terms "during their single lives," and "children," related exclusively to his daughters, and not to his son Robert. Although his purpose may have been obscurely and imperfectly expressed, yet it is nevertheless obvious, that it was his design merely to provide a home and a maintenance for his daughters during the period that they were single and unprotected ; but that this provision for them was to continue no longer than after they had found a support and an asylum under a husband's roof. That the terms "single lives," could not have had any reference to Robert, is manifest from the language which immediately follows, and which is in these words, "and in case my said children here mentioned should marry, or my son Robert should die without lawful issue, then and in such case it is my desire that my son Walter should have said lands," &c.

Now what are the contingencies upon which the estate is to pass to Walter? The marriage of the daughters, and the failure of issue in Robert. The very result which is here contemplated and provided for by the testator, and which is to defeat the contingent estate to Walter, namely: "Robert's having lawful issue," is repugnant to, and inconsistent with the idea, that the estate was only to continue in Robert during his single life."

The same may be said of the term "children," used by the testator. If he designed this word to have its usual signification, and to embrace within its meaning his son Robert, why did he in the very same sentence repel such an idea, by placing him in a different attitude in reference to his estate, from that given to those he denominated "his children." His "children" were not to marry; if they did, they lost their interest in the property; yet Robert was not to have his estate defeated, unless he died without "*lawful issue*," which only could have resulted from marriage, and therefore to suppose that he designed to embrace Robert within the terms, "single lives" and "children," is to suppose he meant nothing when he said, "in case my son Robert should die without lawful issue."

In construing wills, force and effect should be given, if possible, to every expression employed by the testator; and the different clauses of the will should be so interpreted as to harmonise all apparent conflict of language, and that the whole of the instrument should be taken and examined together, in order to arrive at the true intention of the testator, which shall in all cases prevail, if there be apt words to effectuate it. How are we then, in accordance with these principles, to give any force or meaning to the expression: "in case Robert should die without issue," unless we confine the words, "single lives" and "children," in this application, to the daughters alone, and not to Robert. Such a construction would be doing no violence to any rule of law, nor would it be a very gross violation of the rules of grammar. On the other hand, to adopt the construction contended for by the ap-

pellee, and to make the words "single lives" and "children" relate to Robert as well as to the daughters, would be in effect to silence or expunge entirely from the will, the subsequent language referring to Robert's having "lawful issue;" for if the estate was to survive to the daughters or to Walter, upon the death of Robert, what meaning could attach to the reservation or provision in favor of "the lawful issue of Robert?"

Again, it is contended that the last expression in the clause of the will, which we are considering, relating to Walter Chew, and which is in these words, namely: "until in possession of my whole landed estate, as above recited," would indicate that the testator contemplated making his son Walter the ultimate beneficiary of his whole estate, after the termination of the life-estate in his other children. The application of the rule of construction already referred to, which requires that if possible, force and effect should be given to all the different parts of a will, would lead us to give a different interpretation to this expression, in order to preserve and effectuate the previous language of the testator, wherein he says, that Walter Chew is only to enjoy the whole of his lands, "to him, his heirs and assigns, forever," upon condition, that "Robert should die without lawful issue." As in the instance already put, if the interpretation contended for be the proper construction of this particular expression, it is obvious, that it being directly in conflict with the previous language of the testator, it must have the effect to neutralize or annul it.

This language, in our opinion, is susceptible of a different construction, which would render it perfectly compatible with the previous expression of the testator in regard to the "issue of Robert." The clear and obvious meaning of the testator, in using the language, that Walter "be debarred from selling or disposing of the same, until in possession of my whole landed estate, *as above recited*," is, that he should be absolute owner of the land, only in the event of the death or marriage of his sisters, and the death of his brother Robert, *with-*

*out issue.* Otherwise he was to take no more than a life-estate in "eight acres of the above mentioned land, embracing the saw-mill and mill-seat."

To adopt the views of the appellees counsel, so forcibly presented to us in this case, we would be obliged to strain the language of this will, for the purpose of gathering from it an intention on the part of the testator, to create among his children, an estate in joint tenancy. We are not prepared to take such a step. On the contrary this court is imperatively required by a long course of judicial decisions in this State and elsewhere, sustained by every dictate of reason, justice and humanity, to view with disfavor, estates in joint tenancy, and to give the widest and most liberal construction to testamentary instruments, in order to defeat them wherever we can. In this case we have no difficulty in accomplishing such a purpose.

There is one other view which renders it impossible that this devise should create a joint tenancy. If the position which we have already taken be correct, that Robert Chew took a different estate in these lands from that taken by his sisters, as was conceded by the appellees' counsel, in one view which they took of this case, then he could not have taken an estate in joint tenancy with his sisters, because one of the necessary ingredients or prerequisites of such an estate is absent, viz: *unity of interest.* To an estate in joint tenancy the following circumstances are necessary, namely, unity of interest, unity of title, unity of time, and unity of possession; or, in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession. If Robert, therefore, has a different interest in these lands, from that of his sisters, all grounds for contending that the estate is a joint tenancy, must fall, inasmuch as one of the essential requisites of such an estate is wanting.

There remains but one other objection to be disposed of, and that is, that the law requires that the seisin of the hus-

band should be a *sole* seisin, and that as Robert Chew held these lands jointly or unitedly with his sisters, he has not such a *sole* seisin, as would entitle his widow to dower. The authority relied upon as controling this case in this particular, is found in *Park on Dower, p.* 38. The author says, "it is next to be observed, that the law requires the seisin of the husband to be a sole seisin. If the husband during all the time of the coverture be seised jointly with another, no title of dower will attach." From what the learned author says afterwards, we think he designs the principle to apply only to cases of joint tenancy, and to estates of a kindred character, and not to tenancies in common. He clearly exempts cases, like the one now under consideration, from the operation of such a rule, for, on page forty-one, he announces the following to be the law: "Although a *sole* seisin is necessary in order to confer a title to dower, it is not requisite that it should be a seisin of the entirety. A sole seisin of the freehold and inheritance, in any particular share or property of lands, either as tenant in common, in coparcenary, or otherwise, will be subject to the attachment of dower, to the extent of the share of each tenant, in respect of whose relation, as husband, to any particular woman, that title can accrue." And *Crabb,* in his *Treatise on the "Law of Real Property," p.* 134, recognises the same doctrine, as well as indeed all other authors upon the same subject.

Every wife by law is entitled to be endowed of all lands and tenements, of which her husband was seised in *fee-simple,* at any time during coverture, or in *fee tail general,* or as heir in *special tail,* and of which any issue, which she might have had, might by possibility have been heir, and she shall be endowed as well of lands, where the husband had a *seisin in law,* as an *actual seisin. Co. Lit.,* 31, *(a.)* 2 *Sellon's Prac.,* 200.

Courts of justice regard with the tenderest solicitude the widow's claim to dower, and while they would be unwilling even to disallow it, except under the mandates of the clearest rules of law, they will always, by the most liberal policy and

rules of construction, favor this most humane provision of the common law, which was designed for the sure and competent support of the bereaved widow, and the better nurture and education of her unprotected children.

For the reasons we have assigned, the court is of opinion, that upon the death of John Chew, his son Robert took an estate in fee tail, (which is made by our act of Assembly an estate in fee-simple,) in one-fifth of the lands mentioned in the will, and that the daughters, each, took an estate for life in one-fifth of the same lands, as tenants in common, subject to have their said estate defeated upon their marriage or death, with remainder, in each share, to Robert and his heirs; and that, as a necessary consequence, his widow, Tabitha Chew, the demandant, is entitled to be endowed in said lands.

*Judgment reversed and procedendo ordered.*